WO

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Carmen Lucia Soto, | No. CV-22-01811-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Carmen Lucia Soto's Applications for Disability Insurance Benefits and Supplemental Security Income by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 17, "Pl. Br."), Defendant Social Security Administration Commissioner's Answering Brief (Doc. 21, "Def. Br."), and Plaintiff's Reply (Doc. 22). The Court has reviewed the briefs and Administrative Record (Docs. 14–15, "R.") and now reverses the decision of the Administrative Law Judge ("ALJ") (R. at 4390–414).

**I.    BACKGROUND**

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security income on August 22, 2017, for a period of disability beginning January 1, 2011. (R. at 4390.) Plaintiff's claims were initially denied on January 23, 2018, and upon reconsideration on May 1, 2018. (R. at 4390.) Plaintiff then testified at a hearing held before an ALJ on November 21, 2019. (R. at 48–75.) On February 3, 2020, the ALJ denied

Plaintiff's Applications (R. at 12–37), and on August 20, 2020, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. at 1–5). Plaintiff appealed, and on November 19, 2021, this Court granted a stipulation for remand. *See* 2:20-cv-01989-GMS. On February 16, 2022, the Appeals Council issued an order remanding the case to an ALJ to resolve several issues, including that the ALJ failed to explain how she considered whether Plaintiff is unable to sustain work on a regular and continuing basis due to the combination of her medical conditions and her frequent attendance at medical appointments. (R. at 4557–58.) On May 24, 2022, Plaintiff testified at another hearing before the ALJ. (R. at 4433–72.) The ALJ denied Plaintiff's Application on August 16, 2022. (R. at 4390–414.) Plaintiff filed this action seeking judicial review of that decision.

The Court has reviewed the medical evidence and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ found that Plaintiff had the following severe impairments: migraine headaches, fibromyalgia, degenerative disc disease of the spine with radiculopathy, thyroid disorder, Addison's disease, left shoulder impingement, obesity, depressive disorder, posttraumatic stress disorder, and anxiety disorder. (R. at 4394.) The ALJ also found that Plaintiff suffers from over forty-five non-severe impairments. (R. at 4394–96.)

Ultimately, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404." (R. at 4397.) The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform "light work" but with several limitations. (R. at 4400.) Based on the vocational expert's answers to hypothetical questions, the ALJ concluded that Plaintiff could perform work as a marker, a mail clerk, or a routing clerk and is not disabled under the Act. (R. at 4412–14.)

II.   **LEGAL STANDARD**

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503,

517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20

C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III.   ANALYSIS

Plaintiff raises three arguments for the Court's consideration: (1) the ALJ erred by failing to consider the frequency of Plaintiff's medical appointments and Plaintiff's ability to sustain employment, (2) the ALJ failed to adequately assess the opinions of three state agency consultants and an examining physician, and (3) the ALJ failed to provide clear and convincing reasons for discrediting Plaintiff's testimony.

Plaintiff first argues that the ALJ erred by failing to consider how the frequency of Plaintiff's medical appointments affects her ability to sustain employment, especially in light of the Appeals Council's specific order to do so on remand. (Pl. Br. at 5–8.) Defendant responds that the ALJ did, in fact, consider the frequency of Plaintiff's medical appointments and adds that the frequency of a claimant's medical appointments should not be considered in a claimant's RFC anyway.

This Court previously granted a stipulation for remand in this case, and the Appeals Council remanded to an ALJ, noting that the ALJ's initial decision

> [did] not contain a discussion of the claimant's ability to perform work activities on a regular and continuing basis. Notably, the claimant alleged an inability to sustain work on a regular and continuing basis both due to the combination of her medical conditions and her attendance at medical appointments. However, the Administrative Law Judge did not explain how she considered this issue in evaluating the claimant's residual functional capacity. . . . Further valuation of the claimant's residual functional capacity is therefore warranted.

(R. at 4557–58 (citations omitted).) The Appeals Council then ordered that "[u]pon remand, the Administrative Law Judge will . . . [g]ive further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations, consistent with the above guidance." (R. at 4558.)

To show that the ALJ abided by the Appeals Council's instructions, Defendant cites the following passage from the ALJ's decision:

> Considering the subjective factors in this case pursuant to SSR 16-3p and 20 C.F.R. 404.1529 and 416.929, the claimant's allegations have been considered in terms of: . . . the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

(Def. Br. at 2–3; R. at 4401–02.) The ALJ then concluded that "[g]enerally, the claimant's statements that she is disabled and unable to work have been inconsistent with the medical evidence of record and they are therefore inconsistent with [the ALJ's] determination." (Def. Br. at 3; R. at 4402.) Thus, Defendant argues, "the ALJ decided not to include any required absences for medical treatment." (Def. Br. at 3.)

Defendant practically concedes the point. Indeed, the ALJ decided not to discuss absences for medical treatment, which is precisely what the Appeals Council ordered the ALJ to discuss. And Defendant's citation to the referenced passage shows only the ALJ generally considered Plaintiff's "treatment," but it does not show the "appropriate rationale with specific references to evidence of record" that the Appeals Council required the ALJ to provide. The ALJ considered the substance of Plaintiff's various treatments throughout the decision, but at no point did she specifically discuss how the frequency of Plaintiff's appointments might affect her RFC and her ability to sustain employment.

Federal law requires ALJs to comply with the orders of the Appeals Council. The regulations state that "[t]he administrative law judge *shall* take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b) (emphasis added). Here, the ALJ failed to adhere to the Appeals Council's remand order directing her to consider how the combination of Plaintiff's medical conditions and attendance of medical appointments

affects her ability to sustain work on a regular and continuing basis. (R. at 4558.) This was legal error.

Nevertheless, Defendant contends that the ALJ did not err—or, essentially, that the ALJ's error was harmless—because it would be inappropriate for an ALJ to consider the frequency of a claimant's medical appointments in determining a claimant's RFC. (Def. Br. at 3.) In support, Defendant cites an unpublished decision in which the Eleventh Circuit explained:

> [W]hether the number of medical appointments affects [a claimant's] ability to work is not an appropriate consideration for assessing her residual functional capacity because that determination considers only the functional limitations and restrictions resulting from medically determinable impairments. *See* SSR 96-8p. The number of medical appointments she attended is not a functional limitation caused by her impairments that would affect her physical or mental capabilities. Moreover, nothing in the record indicates that [the claimant] was required, or would be required, to schedule her medical appointments during working hours so that they would interfere with her ability to obtain work.

*Cherkaoui v. Comm'r of Soc. Sec.*, 678 F. App'x 902, 904 (11th Cir. 2017).

The Court finds this decision unpersuasive. Although SSR 96-8p explains that "[t]he RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments," it also describes RFC as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting *on a regular and continuing basis*." SSR 96-8p (emphasis added). And crucially, the ruling also makes clear that "[t]he RFC assessment must be based on *all* of the relevant evidence in the case record, such as . . . [t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption of routine, [or] side effects of medication)." *Id.* Thus, it is directly contrary to SSR 96-8p to suggest that the frequency of a claimant's treatment should never be considered in determining a claimant's RFC. And the Ninth Circuit has impliedly agreed, albeit in an unpublished

decision, as it remanded a case based in part on a similar argument. *See Bourcier v. Saul*, 856 F. App'x 867, 690–91 (9th Cir. 2021) (remanding because claimant "presented evidence sufficient to establish the possibility that the frequency of her medical appointments may inhibit her ability to work on a 'regular and continuing basis.'" (citing SSR 96-8p)).

Still, Defendant argues that Plaintiff cannot prevail by simply alleging that she frequents the doctor's office. (Def. Br. at 4.) Defendant cites several unpublished decisions in which courts have required evidence that the claimant's medical appointments are not merely frequent but are actually inhibitive, such as evidence that the claimant must attend appointments during work hours, the appointments would interfere with a work schedule, or the claimant would miss a certain amount of time. (Def. Br. at 3–4.) The Court agrees insomuch as the ultimate question is whether there exists substantial evidence that any of the claimant's medically determinable impairments or combination of impairments necessitates such frequent medical treatment that the claimant is unable to do sustained work-related activities on a regular and continuing basis. *See* SSR 96-8p.

But the Court cannot conclude that Plaintiff has failed to proffer such evidence here. Plaintiff has presented over a decade's worth of medical records detailing the treatment for her numerous conditions. Several of Plaintiff's chronic impairments require regular endocrinology to monitor and manage symptoms. (R. at 1408, 1411, 1414–18, 1928, 1936, 1939–40, 2011, 2879, 7105–07, 7112–24, 7130–31.) Plaintiff undergoes regular evaluations, imaging, procedures, and medication management for her chronic fibromyalgia and degenerative disc disease. (R. at 450–60, 468–99, 768–817, 3000–107, 3490–97, 4986–5080.) Plaintiff also receives regular monitoring and treatment for her chronic migraines. (R. at 3479, 3483–84, 4831–82, 6848–52, 7082–101.) In total, Plaintiff has presented evidence of over 600 medical appointments between 2011 and 2021. (*See* Pl. Br. 3–5.) And although the record may not contain direct evidence that these appointments must occur during work hours or would interfere with a regular work schedule, a fact-finder could reasonably infer that, if medically necessary, these

appointments occur so frequently that it would be virtually impossible for Plaintiff to work on a regular and continuing basis. This is especially true considering that the vocational expert testified that a worker could miss no more than one day per month and could arrive late no more than three days per month to sustain the jobs that the ALJ ultimately concluded Plaintiff could sustain. (R. at 4469–70.)

To be clear, the record does not necessarily require the ALJ to find Plaintiff disabled, even if the ALJ reconsiders the evidence in light of Plaintiff's frequent medical appointments. But the ALJ must consider the issue and explain the reasoning in support of her conclusion, as the Appeals Council previously ordered. Accordingly, the Court will remand for further consideration and development of the record as necessary. The ALJ should consider, for example, whether the frequency of medical treatment is necessitated by the medical impairments, whether the need for this frequency is ongoing, whether Plaintiff must schedule all appoints during the workweek or workday and, if so, how much work Plaintiff would miss. *See, e.g.*, *Bourcier*, 856 F. App'x at 691. Because the Court remands for further proceedings on this issue, it need not address Plaintiff's remaining arguments.

**IT IS THEREFORE ORDERED** reversing the decision of the Administrative Law Judge (R. at 4390–414).

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration for further proceedings consistent with this Order.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 29th day of March, 2024.

Honorable John J. Tuchi
United States District Judge